UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 3:19CR146 (JBA) |
| v. | : | |
| | : | |
| NORMAN KLOSEK | : | October 1, 2020 |

GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The Government respectfully submits this Sentencing Memorandum with regard to defendant Norman "Rich" Klosek (the "defendant" or "Klosek") who is to be sentenced on October 14, 2020.

I.  INTRODUCTION AND BACKGROUND

Forty-seven handguns, purchased on 29 separate dates, over a period of six months. Twenty-five of those handguns purchased in March and April 2019. Nine millimeter, .380 caliber, .25 caliber, .32 caliber, .40 caliber. Taurus, Smith & Wesson, Bersa, Walther, Kel-Tec, Ruger, SCCY, Kahr Arms. Klosek bought and sold them all. On 29 separate occasions, Klosek made an independent decision to walk into a gun dealership, falsely attest that he was the actual buyer, and then sell every gun to a drug dealer, gang member, or a nameless criminal who could not lawfully acquire a firearm. Klosek did not discriminate. He purchased guns for anyone willing to pay him, so that he could feed his insatiable appetite for fentanyl. Nor did Klosek care for what purpose the guns would be used. Robbery, assault, burglary, drug trafficking, suicide, and murder were all predictable uses for guns he sold. "More than 342,439 people were shot to death in the United States from 2008 through 2017, meaning that a person is killed with a gun in this country every 15 minutes." *See* https://www.americanprogress.org/issues/guns-

1

crime/news/2019/11/20/477218/gun-violence-america-state-state-analysis/. "More than 35 percent of gun deaths in the United States are gun homicides, meaning that close to 33 people are murdered with a gun every day." *See id.* "The 39,773 total gun deaths in 2017 were the most since at least 1968, the earliest year for which the CDC has online data." *See* https://www.pewresearch.org/fact-tank/2019/08/16/what-the-data-says-about-gun-deaths-in-the-u-s/.

Every time Klosek straw-purchased a gun for a criminal, he contributed to the pandemic of gun violence in our cities. In Hartford alone, through September 26, 2020, there have been 162 shooting victims.[1] Did Klosek ever pause to consider if one of his guns was involved? How could he explain to his children the damage inflicted by the guns he sold? Or more importantly, what could he say to a victim, or a victim's family, to justify his decision to funnel so many weapons into the community?

The danger, violence and destruction caused by Klosek is not hypothetical. On August 22, 2019, Julio Monet, a felon on probation for a 2014 robbery conviction, used one of Klosek's guns[2] to shoot a 22-year old man on Capitol Avenue, in Hartford. The shooting and robbery of the victim (identified herein as "T.C.") was vividly captured on video. Monet walked toward T.C., raised his arm and, at point-blank range, shot T.C. in the face. T.C. immediately collapsed onto the sidewalk, bleeding profusely. Monet checked T.C.'s pockets, then stood over him and slapped T.C. in the face three times before forcibly removing T.C.'s chain from his neck. Monet left T.C. writhing in pain on the sidewalk. Seconds later, Monet returned, leaned over T.C., and

---

[1] In all of 2019, Hartford saw 143 shooting victims.
[2] The Kel-Tec .32 caliber pistol used by Monet was purchased by Klosek on December 29, 2018.

2

shot him in the face a second time. T.C. miraculously survived the two gunshot injuries to his face.

On January 29, 2020, Monet pleaded guilty to assault in the first degree and criminal possession of a firearm. Monet was sentenced to 126 months in jail, followed by 54 months of special parole.

Most of Klosek's 47 guns remain on the street, still available for illicit purposes, but some have been recovered. The circumstances of their recovery, summarized below, provides insight on the scope (and the potential) of the harm caused (and yet to be caused) by Klosek.

- April 22, 2019, Klosek purchased two firearms for Ricardo Reyes, a.k.a. "the Ruler" and "Rick the Ruler." This was Klosek's last firearm purchase and the one that lead to his arrest. Both firearms were seized by law enforcement that day. The circumstances of this transaction are detailed below in the offense conduct section.

- April 7, 2019, a Taurus 9mm pistol was seized along with quantities of heroin/fentanyl and crack cocaine in connection with the arrest of Jose Restrepo, a.k.a. "Crack Baby" in Hartford. Restrepo, like Reyes, is a member of the street gang *Los Solidos*. Restrepo has multiple federal and state firearm and narcotics convictions. Restrepo is awaiting sentencing in United States District Court for distributing fentanyl. The Taurus pistol was purchased by Klosek on November 27, 2018.

- On May 4, 2019, Hartford Police seized a SCCY CPX-2 9mm pistol during a search warrant at Broad Street Liquors. Luis Nieves-Feliciano operated the liquor store and was distributing cocaine and marijuana from that location. Nieves later pleaded guilty in United States District Court to possession with intent to distribute cocaine and

3

unlawfully possessing a firearm as a felon and was sentenced to 46 months' imprisonment. Nieves had previous convictions for sale of narcotics, criminal possession of a firearm, assault on public safety personnel, assault in the second degree, and robbery.   The SCCY pistol was purchased by Klosek on April 12, 2019.

- On June 17, 2019, federal search warrants were executed at 31 Sprague Street, Hartford, and 35 Rowe Avenue, Hartford  The searches were conducted at the conclusion of Reyes' federal wiretap investigation. One firearm was seized from Reyes car, which was parked at his Sprague Street residence. One firearm was seized from 35 Rowe Avenue, where Reyes stored and packaged fentanyl. In addition to the firearm, investigators seized 3500 bags of packaged fentanyl from 35 Rowe Avenue. The firearms – a Glock .40 caliber pistol and a SCCY 9mm pistol – where purchased by Klosek on March 25 and April 6, 2019, respectively.

- On July 10, 2019, Hartford Police recovered a Kel-Tec 9 mm pistol in connection with an arrest on Magnolia Street. A 20-year old man was arrested for carrying a pistol without a permit. That case is pending in Hartford Superior Court. The Kel-Tec was purchased by Klosek on March 26, 2019.

- On September 12, 2020, Brimfield (MA) police responded to shooting incident with a victim. Responding officers made contact with a 20-year old man with a gunshot would to his leg. The shooting victim was in possession of a loaded Bersa .380 pistol. The victim's girlfriend told the police that he was shot in Hartford, but because the victim had an outstanding arrest warrant in Connecticut, she drove him to Massachusetts to obtain medical treatment. Brimfield Police contacted Hartford Police and confirmed

4

   that the victim had an outstanding warrant for assault in the second degree, unlawful discharge of a firearm, and risk of injury to a minor. The Bersa pistol was purchased by Klosek on April 7, 2019.

- On September 22, 2020, Riverside (CA) narcotics officers recovered a Spikes Tactical .32 caliber pistol. The gun was sold on the street in exchange for narcotics. The Spikes Tactical pistol was purchased by Klosek on April 2, 2019.

II.    GUIDELINE CALCULATION

The parties and the PSR concurred that the base offense level was 14, to which six levels were added under U.S.S.G. § 2K2.1(b)(1)(C) as the offense involved at least 24, but less than 99 firearms, four levels were added U.S.S.G. § 2K2.1(b)(5) as the defendant knew or had reason to believe, that the individuals he transferred those firearms would be unlawfully in possession of the firearms or who intended to sue or dispose of the firearms unlawfully and four levels are added under U.S.S.G. § 2K2.1(b)(6)(B) as the defendant possessed or transferred multiple firearms with knowledge, intent or reason to believe they would be used in connection with another felony offense. *See* PSR ¶¶ 35-38. Three levels are subtracted for the defendant's acceptance of responsibility. *Id*. ¶¶ 44-45. The parties calculated the defendant's criminal history as category I. The PSR concurred. *See* PSR ¶ 50. A total offense level 28, with a Criminal History Category I, results in a sentencing range of 57 to 71 months of imprisonment. *See id.* ¶ 91.

III.    OFFENSE CONDUCT

On April 11, 2019, United States District Judge Robert N. Chatigny authorized the FBI to intercept wire and electronic communications over a wireless telephone (herein "Target Telephone 2") being used by Ricardo Reyes, a.k.a. "Rick the Ruler." On April 22, 2019, multiple intercepted

communications over Target Telephone 2, long with law enforcement observations, revealed that Reyes' and Carlos Soto, a.k.a. "Puchie" were brokering a gun deal where Julio Martinez would purchase two firearms from Reyes and Soto.

The initial conversations regarding a possible gun transaction between Reyes and Soto occurred on April 18, 2019.   At approximately 3:39 p.m., Soto called Reyes on Target Telephone 2.  Soto: "you what up with, um, remember that dude to get the, um, the thing, the toy."   Reyes: "yeah."   Soto: "And he wants a buck right on top."   Reyes: "yeah."   Soto: "And when we could do it." Reyes: "I don't know let me call him and call you right back."   The conversation continued. Soto: "The, the, the, the one you got that shit was how much you paid for that. That shit was like two, two seventy-five."   Reyes: "yeah."   Soto: "alright."   Reyes: "yeah, like, yeah like two something plus the buck."   Soto: "So three, he want three or not.   The least two, the least two." Reyes: Alright I got to call the dude and find out when he, when he available."

On April 22, 2019, at approximately 12:23 p.m., Reyes received a text from Soto, which read: "Yo my man ready ur boy wants them toys."   Less than two minutes later, Soto called Reyes. Soto: "Yo he said, he said how he's going to do it he said if you can come down here talk to him." RR: "A, yo, he need, listen he need to know, I need to know how much bread he got, what he want, I'm going to look for him the cheapest that we can get it. You know what I'm saying and if there's something left over then I'll bring it back to him if not then he'll get the receipts." Soto: "Ok and what he'll order on-line right." RR: "On-line no he go grab them right now." Soto: "Oh you go to the place." RR: "Yeah." Soto: "Alright I'm going to call him right now."

Thereafter, investigators initiated surveillance of Reyes.   At approximately 1:06 p.m., Reyes was joined by his girlfriend, co-defendant Evalinda Montalvo.

6

Shortly before 2:00 p.m., investigators observed Reyes drive from Hungerford Street and travel on I-84 west and Route 9 south to towards New Britain, arriving at 85 Arch Street, New Britain at approximately 2:19 p.m.  At approximately 2:20 p.m., investigators observed Soto approach Reyes' vehicle.  While Reyes and Soto were together, Reyes called Klosek and stated "we about to do business, dog, chill I'm getting up all the money up right now . . . It's going to be listen, it's going to be something nice you going to make something nice today alright."  At 2:42 p.m., Klosek sent a text message to Reyes, which read: "11 howard street enfield."  Investigators were able to identify Klosek as the owner of that residence and according to Connecticut State Police records, Klosek had purchased 45 handguns since November 2018, approximately 25 of which were purchased since March 2019.

At approximately 2:43 p.m., investigators observed Reyes drop off Soto at Broad and High Streets, New Britain.  Reyes returned to Hartford and at approximately 3:25 p.m. was observed by investigators traveling north on I-91 in the area of the I-291 interchange.  At 3:22 p.m., Reyes called Klosek and told him that he will "be there in 15 minutes."  At approximately 3:38 p.m., investigators observed Reyes arrive at 11 Howard Street, Enfield.  Soon after, investigators observed Reyes' vehicle depart 11 Howard Street and proceed to I-91 south.  Investigators then followed Reyes' vehicle to Newington Gun Exchange, Newington.  At approximately 4:30 p.m., investigators observed Klosek get out of Reyes' Cadillac and walk to the front of Newington Gun Exchange, and enter the store.  Soon after, an investigator dressed in plain clothes entered the gun store and observed Klosek at the counter making a purchase.  Meanwhile, a few minutes after the undercover officer entered the store, Reyes and Montalvo entered the store and proceeded to look at the displayed firearms.  Neither Reyes nor Montalvo engaged Klosek.

7

At approximately 4:43 p.m., Reyes and Montalvo exited the store, and 15 minutes later Klosek exited carrying a black shopping bag and returned to Reyes' Cadillac. The Reyes' vehicle then departed driving north towards Hartford.

At approximately 5:02 p.m., Soto called Reyes. Soto: "Talk to me." Reyes: "I got them already." Soto: "Alright, ahh, you got them for cheap right?" Reyes: "Yeah." Soto: "Ok, ok, ok, yo, I'm at the plaza." Reyes: "Get over there to T house." Soto: "Huh?" Reyes: "Get over there to T house." Soto: "You want me to go to T house now?" Reyes: "Yeah." The conversation continued, Reyes: "Alright just make sure Homes got the whole **eight** that's it." Soto: "I got you don't worry about that I got you." Reyes: "And, and, and I gotta make sure that (ui), um, top." Soto: "Well yea let me I can text I'm going to tax them too, I need alright, alright, alright, alright?" Reyes: "Alright, but listen the **price is eight** from our end is eight." Meanwhile, investigators continued to follow Reyes' vehicle, first to 35 Rowe Avenue, Hartford, the known drug stash location for Reyes, and then to meet two drug of Reyes' drug customers to serve them, before eventually heading to New Britain to meet Soto.

At approximately 5:53 p.m., investigators observed Soto entering 339 High Street, New Britain. At approximately 5:58 p.m., the Reyes' vehicle arrived at 339 High Street, and drove to the back of the building. Reyes called Soto and told him he was "in the back." Investigators observed Reyes and Montalvo get out of the Cadillac, with Reyes carrying the same black bag Klosek carried from Newington Gun Exchange. Reyes and Montalvo then entered the rear door of the multi-unit apartment building.

At approximately 6:15 p.m., a blue pick-up truck stopped and dropped off Martinez at 339 High Street. Martinez first walked toward the rear of the building. At approximately 6:19 p.m.,

8

investigators observed Soto standing in the front entrance of 339 High Street holding the same black bag Reyes was previously carrying. Standing behind Soto was Reyes. At the same time, Martinez then observed entering the front entrance of 339 High Street where Soto and Reyes were standing.

At approximately 6:22 p.m., investigators observe Martinez come outside and look up and down the street as he stood in the front entrance of 339 High Street. The vehicle that had dropped off Martinez picked him up. Martinez then drove to Compare Grocery Store at 72 Broad Street[3], where Martinez entered the store. Investigators entered the store and encounter Martinez as he was attempting to exit the store. Martinez was detained and subjected to a pat down based on the investigators' belief that Martinez was now in possession of a firearm. No firearm was recovered, but in Martinez's hands were twenty $10 bills for a total of $200 and a cell phone. The phone was removed from Martinez's hand and placed on food packaging stacked in the store entrance. In his pants pocket investigators located another $650. During the brief stop, Martinez's phone was ringing and the incoming number was Soto's number. Investigators confirmed with an employee inside the store that Martinez had come into the store walked directly to ATM and then left. At approximately 6:28 p.m., investigators observed Soto standing at the entrance of 339 High Street looking down the street while on his phone. Martinez was released at the scene and no items were seized. The money and phone were returned to him.

At approximately 6:41 p.m., investigators observed Reyes and Montalvo walk from 339 High Street to the Cadillac, with Reyes carrying the same black bag. They both entered the vehicle, which then departed 339 High Street.

---

[3] 72 Broad Street is located at the corner of Broad and High Streets, which are approximately .3 miles apart.

Meanwhile, the FBI was coordinating with New Britain Police to conduct a traffic stop. New Britain police conducted a motor vehicle stop of Reyes' Cadillac in the area of 75 North Street. Reyes was the operator. Klosek was the rear seat passenger. And Montalvo was the front passenger. The officers instructed the occupants to exit the vehicle. Klosek was the first to exit the vehicle. When asked if he anything on his person, Klosek stated that he was in possession of several hypodermic needles. A search of Klosek's person revealed that he was in possession of a small bag containing multiple hypodermic needles and numerous wax paper folds, which were recognized by officers to be packaging material for narcotics. Reyes was then instructed to exit the vehicle. A search of Reyes person revealed two plastic containers of a green leafy substance consistent with marijuana. Montalvo was also instructed to exit the vehicle. She admitted to being in possession of marijuana.

As officers searched the vehicle, Klosek disclosed that two firearms he had purchased earlier in the day were in the vehicle. On the rear passenger seat on the driver's side were two boxes. Each box contained a firearm: a SCCY, Model CPX2 9 mm pistol and a Remington, Model RM380, .380 caliber pistol. Officers' also located a large bag that contained numerous plastic containers with marijuana that were identical to the ones that were located on Reyes' person.

Officers' noted the vehicle's radio appeared to be separate from the vehicle's interior. Upon moving the display, officers were able to open it, which revealed a large compartment. Within the compartment, officers located a blue plastic bag that contained a large amount of suspected fentanyl/heroin. In total, 54 containers and 16 small baggies of suspected marijuana, with an aggregate weight of 622 grams, 10 packets of Suboxone, 451 wax folds of suspected

fentanyl, and $1,160 were located in the vehicle.

Reyes was arrested and placed within a New Britain marked unit. Reyes was advised of his *Miranda* Rights at which time he acknowledged that he understood his rights and agreed to speak with police. Reyes stated that the drugs found in the vehicle were his. Reyes further stated, "you got me, let's get this over with."

Klosek was also advised of his *Miranda* rights. He acknowledged that he understood his rights and agreed to speak with the officers. He stated that he was just getting a ride home to Enfield after he purchased the firearms. Klosek advised that he used heroin recreationally, but the wax folds and needles were empty. When Klosek was told that his permit could be revoked based on the presence of narcotics, he agreed to voluntarily surrender his firearms to avoid issues with Connecticut State Police Firearms and Licensing Unit. Neither Klosek nor Montalvo were arrested and Klosek was allowed, with Reyes' permission, to take Reyes vehicle.

In the bag with the two firearms was the receipt confirming that the firearms were purchased earlier that day at the Newington Gun Exchange.

According to Connecticut State Police, which maintains firearm registration records in Connecticut, Klosek first purchased and registered a firearm with the State of Connecticut on November 6, 2018. Since that date, Klosek purchased 47 firearms (all handguns), to include the two firearms recovered in the April 22, 2019 motor vehicle stop in New Britain.

On April 24, 2019, the FBI obtained a search warrant for Klosek's Enfield residence. No one was present. The search resulted in the following seizures. In the basement, there was a firearm display case that contained three empty gun boxes for a Taurus 9 mm pistol, a Smith & Wesson .40 caliber pistol, and a Taurus 9 mm Para pistol. In the same display case, investigators

11

seized numerous receipts for firearm purchases from various gun retailers on the following dates: 11/27/18 (two firearms from Hoffman's); 12/3/18 (two firearms from Hoffman's gun store); 12/15/18 (one firearm from Cabela's); 12/29/18 (two firearms from Hoffman's), 12/30/18 (two firearms from Newington Gun Exchange); 3/8/19 (one firearm from Newington Gun Exchange); 3/11/19 (one firearm from Tobacco Valley); 3/19/19 (two firearms from Newington Gun Exchange); 3/28/19 (one firearm from Tobacco Valley); 3/28/19 (one firearm from Newington Gun Exchange); 3/29/29 (for two firearms from Newington Gun Exchange); 3/29/19 (one firearm from Hoffman's); 4/4/19 (one firearm from Newington Gun Exchange). None of these, or any other, firearms were recovered during the search.

While investigators were on scene, Klosek's wife arrived. She confirmed that Klosek lived there, though she had not seen him since April 22, 2018. She reported that Klosek is using heroin, and that he comes and goes from the residence. She also reported that Klosek was arrested on April 13, 2019 by Enfield Police for drug possession. She reported further that Klosek had guns years ago, but that she thought he sold them all.

On April 25, 2019, the FBI arrested Klosek on a complaint and federal arrest warrant in Hartford. Klosek was in possession of 25 bags of fentanyl.

IV.   DISCUSSION

    A.   Legal Standard

Under 18 U.S.C. § 3553(a), the sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The statute then provides:

The court, in determining the particular sentence to be imposed, shall consider:

     (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

     (2)    the need for the sentence imposed to:

     (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

     (B)    to afford adequate deterrence to criminal conduct;

     (C)    to protect the public from further crimes of the defendant; and

     (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

     (3)    the kinds of sentences available;

     (4)    the kinds of sentence and the sentencing range established [in the Sentencing Guidelines];

     (5)    any pertinent policy statement [issued by the Sentencing Commission];

     (6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

     (7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

     B.    <u>Sentencing Factors in 18 U.S.C. § 3553(a)(2)</u>

     1.    *Seriousness of the Offense, Respect for the Law, and Providing Just Punishment.*

It is impossible to understate the seriousness of Klosek's offense and its impact in our communities, particularly Hartford. State and federal governments have enacted a myriad of laws and regulations intended to prevent guns from getting to certain high-risk groups, such as felons

13

and drug dealers. These restrictions serve an important purpose in protecting our communities. Firearms are frequently "tools of the trade" for drug dealers and are "regularly found on narcotics traffickers." *United States v. Reyes*, 353 F.3d 148, 154 (2d Cir. 2003). Moreover, "the dangerousness of guns and their adaptability to use in violent crime is why Congress has prohibited their possession by convicted felons." *Id*. Prohibiting felons from possessing firearms is intended "to protect society by reducing the risk of violence that may result from the possession of guns by persons inclined to crime." *Id.* By lying to gun dealers, and dealing firearms without a license, Klosek flagrantly violated these prohibitions. He did exactly what the laws were intended to prevent – arming felons, drug dealers and other prohibited persons.

Protecting the neighborhoods and residents of Hartford is a daunting and dangerous task for the law enforcement community. The proliferation of firearms, and firearms related criminal activity, in Hartford endangers residents and visitors, and presents an obvious and life threatening danger to all. In 2019, 363 firearms were seized by the Hartford Police Department. The community demands of law enforcement a concerted effort to stem the flow of illegal firearm trafficking and, in particular, to prevent the possession, receipt and use of firearms by prohibited persons, such as felons and narcotics traffickers, and to prevent their use in violent crime. Arming narcotics traffickers and gang members, however, is precisely what Klosek did, and did many times. Klosek single-handily put 45 guns into an unregulated covert market where the most dangerous and unpredictable offenders have access, and where their intentions are never lawful. The deliberate, repeated and callous distribution of firearms is inexcusable and demands a substantial sentence.

14

Every one of Klosek's guns is capable of causing irreparable damage and destruction. Klosek told the probation officer, "he did not intend for anyone to be harmed."  *See* PSR ¶ 30. He may not have intended to harm anyone, Klosek knew to a moral certainty that those firearms would eventually be used in other criminal conduct.  Every gun transaction that Klosek negotiated could predictably lead to another shooting victim.  One man has already suffered life-threatening injuries from one of Klosek's guns.  How many more victims will there be?  A definitive and clear message must be sent that such conduct will be justly punished.

    2.    *Adequate Deterrence and Protection of the Public*

There is a need for specific deterrence and protection of the public.  In a three-week period in April, Klosek walked into a licensed gun dealer on ten separate occasions and purchased 16 guns.  The repeated and frequent deliberate decisions he made to acquire a gun for a drug dealer and gang member presents a clear danger to our communities.  Klosek attributes his multi-month long crime spree to the throes of his heroin/fentanyl addiction.  Many drug addicts make poor, and often criminal, decisions, but the repeated choice to sell guns to drug dealers and gang members requires a particular level of guile and deviousness.  Moreover, Klosek was actively straw-purchasing firearms while receiving inpatient treatment at the Rushford Center between December 2018 and February 2019.  *See* PSR ¶ 76.  Thus, even during a period of sobriety, Klosek made numerous calculated decisions to straw-purchase firearms.

Recent events have underscored the need to protect the community.  On August 11, 2020, at approximately 10:30 p.m., Klosek was driving northbound on Interstate 91 in Windsor when he ingested fentanyl.  He overdosed, causing his car to strike a light pole and careen across the three northbound lanes and the center median before striking two vehicles traveling southbound.

15

Miraculously no one was seriously injured. Klosek was found unconscious, with his skin and lips turning blue in color. Paramedics revived Klosek using Narcan. Klosek was transported to Hartford Hospital. That investigation continues pending the results of Klosek's blood test. He told the investigating officer that he went to Hartford to purchase cocaine, which he ingested as he drove home, and blacked out with no recollection of the accident.

On August 13, 2020, a United States Probation Officer made an unannounced visit to Klosek's residence. Klosek told the officer that he had dropped off a friend and was involved in a motor vehicle accident. He admitted using alcohol, but denied using any controlled substances. Klosek also denied being in Hartford, which the conditions of his release prohibited from being. Klosek was directed to provide an unobserved urine sample. He did, which tested negative for controlled substances. Klosek was then instructed to report to the Probation Office and provide an observed urine sample. Klosek did, which tested positive for fentanyl.

On August 14, 2020, Klosek admitted to the Probation Officer that he used cocaine and alcohol, but denied using fentanyl. He also denied traveling to Hartford, despite his contrary statements to the investigating trooper. Klosek had also discontinued his weekly tele-health sessions, despite contrary statements to his probation officer. It is apparent that not only did Klosek resume using illicit drugs, but he lied to probation about the circumstances of his drug use and the frequency of his treatment sessions. Moreover, Klosek likely provided a bogus urine sample to his probation officer on August 13.

These recent events confirm that treatment and sobriety do not guarantee Klosek's adherence to the law, or the safety of the community. On the contrary, Klosek repeatedly makes dangerously reckless choices when it serves his needs, all at the public's expense.

...
...

...

3.  *Educational and Vocational Training, and Medical Care and Treatment*

Klosek reported a long history of alcohol and drug use. PSR ¶ 69. Alcohol presented the most problems for him initially, but at age 24 Klosek managed to gain control of it. *Id*. Opiates, however, supplanted alcohol to became Klosek's demon. *Id.* ¶ 73. It started with prescription Percocet, but by age 28, Klosek had turned to ingesting cheaper heroin, which soon "took over his life." *Id*. ¶ 74. Klosek obtained treatment and was sober for several years. *Id.* At age 33, however, Klosek relapsed when he began using fentanyl. *Id.* ¶ 75. From December 2018 until February 2019, Klosek received treatment at Rushford, but did not successfully complete treatment due to a relapse. *Id.* ¶ 76. Post-arrest, Klosek completed the Salvation Army inpatient treatment program, followed by intensive outpatient treatment program. *Id.* ¶ 78.

More recently, as discussed above, Klosek's efforts toward treatment have regressed. As described above, on August 12, 2020, Klosek used fentanyl, overdosed, and caused a motor vehicle accident. Importantly, he had previously stopped treatment, and lied to his probation officer about it.

In 1998, Klosek nearly graduated high school in Enfield, but was one credit short from his diploma. *Id*. ¶ 81. He later obtained his GED in 2007. *Id.* Klosek later obtained certificates in machine technology from a local community college. *Id*.

Post-arrest, Klosek obtained employment at Phoenix Manufacturing as an aerospace inspector earning $24.00 per hour. *Id.* ¶ 82. He previously worked at Phoenix from December 2013 until December 2016. *Id*. Thereafter, he worked at Pratt & Whitney from January 2017 until March 2019 as an aerospace technician earning $35.00 per hour, though he was also attending inpatient treatment from November 2018 until March 2019. *Id.* ¶ 83. Throughout this latter time

17

period, Klosek was also selling guns to support his drug use.

### C. Section VI.E of Defendant's Sentencing Memorandum

As to the defendant's argument in Subsection E of Section VI of his sentencing memorandum, the government disagrees with certain statements and characterizations contained therein. The government believes the defendant's characterization is somewhat overstated and would be happy to address those issues at the sentencing hearing.

## V. SUMMARY AND CONCLUSION

Klosek is not the first drug addict who committed a crime to support his habit. Many addicts steal or sell drugs to feed their addiction. Typically, those addicts get caught frequently and are charged with petty crimes. But selling guns to gang members and drug dealers cannot be justified as a series of "poor decisions" induced only by a drug addiction. Klosek had a well-paying job and was receiving substance abuse treatment when he embarked on a campaign to arm Hartford's underworld. Money for drugs may have been Klosek's inspiration, but for six months, Klosek navigated the City's most dangerous neighborhoods to negotiate with its most treacherous inhabitants. Uncontrolled drug addicts seeking only to "score" could not "accomplish" what Klosek did. Klosek had to be one-step ahead of his criminal associates to ensure his own survival. For six months, he successfully avoided detection and his criminal conduct was only discovered from the intercepted communications over Reyes' phone. Addict or not, Klosek's conduct is indefensible and the call for just punishment is deafening.

Moreover, Klosek dispelled any claim that once caught he was no longer a danger to the community when he ingested fentanyl while driving, overdosed, caused a three-vehicle accident, and had to be revived with Narcan. It is dangerously clear that Klosek poses a threat to the

community whether or not he is sober or in treatment.

For all of these reasons, the government submits that a sentence of 64 months' imprisonment is minimally necessary to achieve the purposes of a criminal sentence.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

/s/ *Brian P. Leaming*
BRIAN P. LEAMING
ASSISTANT UNITED STATES ATTORNEY
450 Main Street, Room 328
Hartford CT 06103
(860) 947-1101
Federal Bar No. CT 16075

CERTIFICATE OF SERVICE

This is to certify that on October 1, 2020, a copy of the foregoing Sentencing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

 */s/ Brian P. Leaming*
BRIAN P. LEAMING
ASSISTANT UNITED STATES ATTORNEY